1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RICHARD E. QUINTILONE II (SBN 200995)
JEFFREY T. GREEN (SBN 330065)
**QUINTILONE & ASSOCIATES**
22974 EL TORO ROAD, SUITE 100
LAKE FOREST, CA 92630
TELEPHONE: (949) 458-9675
FACSIMILE:  (949) 458-9679
E-MAIL: REQ@QUINTLAW.COM; JTG@QUINTLAW.COM

Attorneys for Plaintiffs, JENNIFER WARD and SACORA BESABE on behalf of themselves and on behalf of a Class of all other persons similarly situated.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WARD, an individual; and SACORA BESABE, an individual; on behalf of themselves and all others similarly situated<br><br>      Plaintiffs,<br><br>  vs.<br><br>SUTTER VALLEY HOSPITALS, a California corporation; and DOES 1 through 100, inclusive,<br><br>      Defendants. | **Case No.: 2:19-CV-00581-KJM-AC**<br><br>**CLASS ACTION**<br>**Assigned For All Purposes To:**<br>Hon. Kimberly J. Mueller<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DECLARATIONS RELIED UPON IN DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR CLASS AND CONDITIONAL CERTIFICATION**<br><br>[Filed Concurrently with Notice of Motion; Points and Authorities ISO Motion to Strike; Request for Judicial Notice]<br><br>**Date:  August 27, 2021**<br>**Time: 10:00 a.m.**<br>**Ctrm: 3**<br><br>Complaint Filed:  February 13, 2019<br>FAC Filed: June 2, 2020 |

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

# Contents

I.   INTRODUCTION ........................................................................... 1

II.  ARGUMENT ................................................................................. 1

  A.    **Counsel's Communications with Putative Class Members Were Coercive and Deceptive** ..................................................................... 1

    i.   **Defendant's Counsel Made Inadequate Disclosures to Declarants Before Acquiring Sworn Declarations** ................................................. 1

    ii.  **The *Quezada* Test Determines That Defendant's Ex Parte Communications with Putative Class Members Was Deceptive and Coercive** .............................. 4

    iii. **Plaintiffs Appropriately Applied *Richardson*, *Quezada*, and *Longcrier* in the Motion to Strike** ................................................................. 5

  B. **Defendant's Counsel Did Not Fully Disclose Conflict of Interest to Employees Before Acquiring Declaration Testimony** ..................................... 8

  C. **Plaintiff's Motion to Strike Pointed Out Several Inconsistencies in Deposition Testimony** ................................................................... 9

    i.   **Gem Avara** ............................................................. 9

    ii.  **Alexis Babbes** ......................................................... 9

    iii. **Nicole Bender** ........................................................ 10

    iv. **Nicole Dolstra** ........................................................ 11

    v.  **Bradly Halterman** ..................................................... 11

III.  CONCLUSION ............................................................................ 12

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

**Cases**

*Delbridge v. Kmart Corp.,* 2013 WL 2605513, (N.D. Cal. June 11, 2013) .................... 4

*Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d 1218 (S.D. Ala. 2008)..................... 1, 2, 9

*Maddock v. KB Homes, Inc.,* 248 F.R.D. 229 (C.D. Cal. 2007)....................................... 4

*Martino v. Ecolab, Inc.,* No. 14-CV-04358-PSG, 2016 WL 614477 (N.D. Cal. Feb. 16, 2016) ......................................................................................................... 3

*Quezada v. Schneider Logistics Transloading & Distribution,* No. CV 12-2188 CAS (DTBx), 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013)....................................... 1, 5, 8

*Richardson v. Interstate Hotels & Resorts, Inc.,* 2018 WL 1258192 (N.D. Cal. Mar. 12, 2018) .................................................................................................... 1, 6, 7

*Slavkov v. Fast Water Heaters Partners I, LP*, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) .............................................................................................................. 2

*Villa v. United Site Servs. of Cal., Inc.,* No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) ............................................................................. 3

**Rules**

Rules of Professional Conduct Rule 1.13 ........................................................................ 8

Rules of Professional Conduct Rule 3-310(c) ................................................................. 5

Rules of Professional Conduct Rule 4.3 .......................................................................... 8

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs submit that the declarations provided in support of Defendant's Opposition to Plaintiff's Motion for Class and Conditional Certification should be stricken from the record. Defendant's arguments in its Opposition papers are not persuasive. In obtaining declarations, Defendant failed to explain to the declarants the purpose of the interview, the declarants' role in the case and the fact that their interests were adverse to Defendant's. These shortcomings are evident during the depositions of five declarants taken.

Defendant engaged in a deceptive and coercive declaration gathering process, very similar to the declaration gathering process in *Richardson v. Interstate Hotels & Resorts, Inc*., 2018 WL 1258192 (N.D. Cal. Mar. 12, 2018), where the court struck defendant's declarations based on the totality of "troubling circumstances" under which the declarations were obtained. Further, Defendant's coercive and improper behavior in obtaining declarations parallels that of *Quezada v. Schneider Logistics Transloading & Distribution,* No. CV 12-2188 CAS (DTBx), 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013); and *Longcrier v. HL-A Co., Inc*., 595 F.Supp.2d 1218 (C.D. Cal. 2007). Likewise, here, Plaintiffs' motion to strike Defendant's declarations should be granted.

## II.  ARGUMENT

### A. Counsel's Communications with Putative Class Members Were Coercive and Deceptive

#### i.  Defendant's Counsel Made Inadequate Disclosures to Declarants Before Acquiring Sworn Declarations

Plaintiff does not dispute that the Who We Are Statements and the Declarations stated there was a class action or that Plaintiff was seeking to represent them. Plaintiff does not even dispute that the statements were read to the Declarants. However, Plaintiff does dispute whether the declarants understood what they were being read.

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

1   On two particular instances, declarants did not understand that they were putative
2   class members, and that providing testimony for a declaration could adversely harm
3   their chances at potential recovery in this case. Bender Depo Tr. 35:22-36:9; 51:19-20;
4   52:11-13; 53:4-8., Halterman Depo Tr. 51:17-25**.** Even having the <u>Who We Are</u>
5   statement read to them over the phone, and available on their computer/phone screens
6   in their depositions, declarants still struggled to understand the contents of the
7   documents, or how executing the documents would impact their rights and recovery.

8       While generally employers are free to communicate with unrepresented
9   prospective class members, district courts are empowered with relatively broad
10  discretion to limit communications between parties and putative class members.
11  *Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d at 1226. Notably, in *Longcrier*, the Court
12  granted Plaintiff's motion to strike. *Id.* at 1230. "Courts in this district have limited
13  communications, as well as invalidated agreements that resulted from those
14  communications [between the employer defendant and putative class member
15  employees], when they omitted critical information or were otherwise misleading or
16  coercive." *Slavkov v. Fast Water Heaters Partners I, LP*, 2015 WL 6674575, at *2
17  (N.D. Cal. Nov. 2, 2015).

18      Defendant cites *Villa v. United Site Servs. of Cal., Inc.,* No. 5:12-CV-00318-
19  LHK, 2012 WL 5503550, at **14-15 (N.D. Cal. Nov. 13, 2012) in support of their
20  position that striking declarations is not warranted. see **Dkt 60, at 8**. However in *Villa*,
21  although the court did not strike the declarations, it found that defendant's declarations
22  did not have "any significant probative value," and ordered that the defendant issue a
23  corrective notice informing class members that signing the declaration *could* affect their
24  ability to recover in the lawsuit. (emphasis added) *Id.* Despite that employees were
25  advised that signing was voluntary and received an explanation letter, the *Villa* court
26  acknowledged the risk factors present such as "that employees were required to meet
27  with their supervisors at the workplace during work hours to discuss the declarations"
28  and were not expressly told of their rights as class members in the lawsuit, nor advised

that providing a declaration could affect their ability to recover. *Id.* Similarly here, class members testified that they were often asked to participate in the interview by a supervisor or human resources representative during work hours (often while still on the clock), and that some class members did not understand the potential impact to their right to recovery by providing a declaration. See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16.

Defendant's reliance on *Martino v. Ecolab, Inc.,* No. 14-CV-04358-PSG, 2016 WL 614477, at *7 (N.D. Cal. Feb. 16, 2016) is also misplaced. *Martino* determined whether to strike defendant's employee declarations on defendant's motion to decertify, not in opposition to a motion for class certification. *Id.* at 8. Therefore, the context of the procedure are distinguishable and the motion to strike factors were not fully evaluated by the Court. Further, in *Martino* the court cited that the two-page consent form defendant provided during the interview process "clearly stated…that it could affect the employee's potential claims against [the company]." Defendant's "Who We Are and Purpose of Interview Form" contains such language, but was not always understood by declarants. See Who We Are statement, Dkt 60-1, Ex. A; Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16.

Similarly in *Delbridge v. Kmart Corp.,* 2013 WL 2605513, at **3-4 (N.D. Cal. June 11, 2013) although not stricken outright, the Court noted that the "problematic" circumstances by which defendant obtained declarations, including at work rather than a neutral environment, which would be considered in assessing their probative value, if any. See *Id.* at *6-7.

Further, *Maddock v. KB Homes, Inc.,* 248 F.R.D. 229, 237 (C.D. Cal. 2007) does not apply here. In *Maddock,* the Court denied plaintiff's motion to strike class declarations obtained by defendant where "plaintiff submit[ed] no evidence that defendant engaged in any misleading or coercive communications with potential class members." (emphasis added). *Id.* In contrast, here, Plaintiff has produced ample evidence, including: deposition testimony that declarants were not fully aware of their

1    position as class members, or that their declarations could be adverse to the class action.

2    See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16.

3        Further, in *Soto v. Castlerock Farming & Transp., Inc.,* No. 1:09-cv-00701-AWI-

4    JLT, 2013 WL 6844398, at **4-5 (E.D. Cal. Dec. 23, 2013), plaintiff's motion to strike

5    was denied as untimely filed. *Id.* at *1. To the extent the court evaluated the merits of

6    plaintiff's the motion in the alterative, the facts are distinguishable. In *Soto,* plaintiff

7    alleged that defendant did not inform "putative class members…of details [of the]

8    litigation," however, the court analyzed that defendant's communications did not appear

9    to be misleading. *Id.* at * 11. Further, the *Soto* court did <u>not</u> discuss such additional

10   factors as are present here – namely that the interviews occurred during work shifts, and

11   that often supervisors, managers and/or human resources requested declarants

12   participate in the interviews and brought or sent declarants the declaration to sign. See

13   Avara Depo Tr. 29:12-21; Babbes Depo Tr. 24:24-25:4; Bender Depo Tr. 9:23-10:7;

14   Dolstra Depo Tr. 39:22-40:8; Halterman Depo Tr. 12:3-9.

15        ii. <u>The *Quezada* Test Determines That Defendant's Ex Parte</u>

16            <u>Communications with Putative Class Members Was Deceptive and</u>

17            <u>Coercive</u>

18        Defendant relies on a three-factor test applied by the court in *Quezada v.*

19   *Schneider Logistics Transloading & Distribution*, 2013 WL 1296761, at *4, which

20   requires that (1) the details underlying the lawsuit are disclosed; (2) the nature and

21   purpose of the communications; and (3) the fact that any defense attorneys conducting

22   the communications represent the employer and not the employee. *Id*. Here, Defendant

23   fell short of satisfying the factors. Although Defendant appears to have demonstrated

24   the details underlying the lawsuit, Declarants did not appear to always know the nature

25   and purpose of the ex parte communications. Halterman Depo Tr. 28:12-19. (Declarant

26   understood that document was used to make a statement and he would answer whatever

27   questions the attorney had for him). Further, Defendant did not satisfy their ability to

28   show that they represented the employer and not the employee, when declarants did not

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

understand that their interests as a class member may be adverse to Defendant's. See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16. The testimony of both Ms. Bender and Mr. Halterman show that Defendant has not demonstrated that the communications made to members of the putative class members were made without coercion or deception.

iii.  Plaintiffs Appropriately Applied *Richardson, Quezada*, and *Longcrier* in the Motion to Strike

Defendant contends that *Richardson*, which required that the court stated the class members should have been interviewed after obtaining informed consent. In *Richardson*, the court held that the defense counsel violated <u>Rule</u> 3-310(c) of the California <u>Rules of Professional Conduct</u> when they proceeded to represent the declarants at their depositions without obtaining informed written consent beforehand. *Richardson*, at *7.

For each interview in *Richardson*, defense counsel provided class members with a disclosure form explaining that the counsel was representing the employer, and not the employee, that the information gathered during an interview might be used to defend against the action brought by plaintiffs, and that the employee is not obligated to speak with the employer's counsel. *Richardson*, 2018 WL 1258192, at *7.

Similarly here, Defendant presented class members with "Who We Are And Purpose of the Interview" form, where defense counsel stated it was representing Defendant ("We have been retained by Sutter Valley Hospitals ("SVH" or the "Company") in connection with a lawsuit filed against it by two employees who work or worked as Surgical Technicians at SMCS."), that the purpose of the interview was to gather information that could be used to defend against Plaintiffs' lawsuit ("The purpose of this interview is to get information that may be used as evidence to help SVH evaluate and defend the case."), and that class members did not have to participate in the interviews ("Your participation is voluntary. You will not receive any

benefit for participating and no action will be taken against you if you do not participate."). See Who We Are statement, Dkt 60-1, Ex. A

In *Richardson*, the form disclosure did not include a waiver of or consent to any conflict of interest. *Richardson*, 2018 WL 1258192, at *7. Similarly, here, the "Who We Are And Purpose of the Interview" form did not include a waiver of or consent to any conflict of interest.

Here, although Defendant's counsel did not state they were representing class members at their depositions, (Avara Depo Tr. 30:20-22; Babbes Depo Tr. 26:20-23; Bender Depo Tr. 9:16-18; Dolstra Depo Tr. 40:23-41:11; Halterman 9:7-9) their conduct and objections at the depositions, as well as questioning the deponents, suggested that Defendant was working with them "against the Complaint" and Plaintiffs and their counsel:

In any event, the defendant's representation of the declarants at their depositions was not the only reason the *Richardson* court struck the declarations, as Defendant argues. (See Dkt 60 at 11).

Based on the totality of those circumstances, the *Richardson* court decided to strike all defendant's declarations filed in support of defendant's Opposition to the motion for class certification. See *Richardson*, at *8. Because the circumstances pertaining to class member interviews and declarations in *Richardson* parallel the facts and circumstances of this case, the Court's decision to strike class member declarations used in the Opposition papers should apply to this case.

Defendant further contends that the Plaintiffs' comparison to *Quezada* is inapposite, since the mere act of interviewing employees at their workplace during work hours is coercive. Defendant's belief is incorrect. In *Quezada*, several factors contributed to the Court's decision that the declarations were obtained through coercion. The interviews were conducted at during work hours, and the declarants were told by a supervisor to go to the meeting. See *Quezada*, at *1. Similarly here, declarants were taken to a room by human resources during work hours to speak on the phone with

Defendant's counsel.). Avara Depo Tr. 29:12-21; Babbes Depo Tr. 24:24-25:4; Bender Depo Tr. 9:23-10:7; Dolstra Depo Tr. 39:22-40:8; Halterman Depo Tr. 12:3-9.

Further, in *Quezada*, the disclosures provided by defendant's lawyers were analogous to this case. In *Quezada*, the defendant's lawyers explained to the employees that the meeting was voluntary, signing the declaration was voluntary, details of the case, disclosure that the lawyers represented the employer, not the declarant, and that the declarant could seek counsel. *Quezada*, at *2. Although Defendant distinguishes that defendant's counsel in *Quezada* merely told the declarants that it was "just an interview" (*Id.*) some of the declarants here appeared to believe they were answering questions for attorneys merely "against the Complaint." Halterman Depo Tr. 28:12-19; 31:18-22. Finally, the defendant's lawyers did not tell the employees that the declaration could be used in plaintiffs' lawsuit to limit the employees potential recovery. *Id*. Here, Defendant argues that the declarants signed the Who We Are statement verifying their understanding that their personal interests were potentially adverse to Defendant's interests. See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16. However, as demonstrated above, despite signing the Who We Are statement, not all declarants completely understood the weight of that statement. The circumstances and the disclosures in *Quezada* parallel those in this case. As a result, the Court should examine the Court's decision to strike defendant declarations obtained in *Quezada* and apply the findings in this case.

Defendant argues that *Longcrier* does not apply here because Plaintiffs have not demonstrated that Defendant engaged in behavior that would reasonably be expected to mislead and deceive the prospective plaintiffs concerning the nature, purpose and implications of their participation in the declaration process. *Longcrier*, 595 F.Supp.2d at 1227. Correspondingly here, Defendant's counsel failed to convey to declarants that they were class members with personal interests in the case, and that signing a declaration could adversely affect their interests as a class member. See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1, 37:7-16.

1

2        The comparisons between *Longcrier* and this case continue. The court found that

3   that defendant's conduct in obtaining declarations were a systematic pattern of improper

4   communications that "created an inherently coercive and intimidating environment for

5   interviews and execution of [declarations]." *Id.* at 1229. Each declarant was called into

6   individual meetings with defendant's employees at the stores during work hours to answer

7   questions (and craft declarations). *Id.* at 1227. Likewise here, declarants were taken into

8   private rooms at work by Human Resources in their declaration interviews. Avara Depo

9   Tr. 29:12-21; Babbes Depo Tr. 24:24-25:4; Bender Depo Tr. 9:23-10:7; Dolstra Depo Tr.

10  39:22-40:8; Halterman Depo Tr. 12:3-9. Despite the fact that *Longcrier* dealt with

11  defendants who covertly concealed the purpose of the declaration as a survey, both cases

12  demonstrate that defendant used tactics that are appear coercive to declarants who are

13  unaware of their rights or their role in the case.

14        Plaintiffs' reliance on *Richardson*, *Quezada* and *Longcrier* is not inappropriate, as

15  all three cases bear similarities to the approach the Defendant's counsel used to acquire

16  class member declarations in preparation for its Opposition papers. Therefore, the Court

17  should consider and apply the reasoning for striking declarations to this case.

18

19  **B. Defendant's Counsel Did Not Fully Disclose Conflict of Interest to**

20       **Employees Before Acquiring Declaration Testimony**

21        Defendant argues that their class member interviews did not violate the <u>Rules of</u>

22  <u>Professional Conduct</u> Rule 1.13 (formerly 3-600) and California <u>Rules of Professional</u>

23  <u>Conduct</u> Rule 4.3 (a), and argue that Plaintiffs misrepresented and mischaracterized the

24  record. This contention is false. Here, understanding that the interests of unrepresented

25  class members are in conflict with the interests of their client, Defendant's counsel

26  should have used firm language to advise class members of the conflict in its Who We

27  Are statement. Defendant claims that the Who We Are statement provided the

28  information necessary to disclose the conflict of interest and advise the employee to

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

seek counsel. See Who We Are statement, Dkt 60-1, Ex. A. However, deposition testimony has revealed that not all deponents understood the entirety of the Who We Are statement, let alone the conflict of interest between their interests and Defendant's. See Bender Depo Tr. 52:7-13, 53:4-8; Halterman Depo Tr. 31:22-32:1; 37:7-16. Therefore, Plaintiffs did not misrepresent declarations or deposition testimony when contending that Defendant's conduct was not in compliance with the California Rules of Professional Conduct.

### C. Plaintiff's Motion to Strike Pointed Out Several Inconsistencies in Deposition Testimony

Defendant argues that Plaintiffs' counsel based its Motion to Strike on inconsistencies between the class member declarations and deposition testimony that did not exist. However, Defendant's contentions are not correct. Each of the five declarants who were deposed had testified inconsistent with their declarations to varying degrees, with one deponent claiming that she would not have provided a declaration if she understood her role in the case, inconsistent with her declaration.

#### i. Gem Avara

Defendant contends that because Ms. Avara testified that she answered her Vocera phone on her break as a "personal choice", (Avara Depo Tr. 24:4-18; 45:8-17) that her testimony was consistent with her declaration that she "can't think of the last time where work has interrupted a rest break." Avara Dec., ¶14. However, this is not true. Plaintiffs clearly identified that Ms. Avara's declaration was distinct from her testimony in her deposition. Despite her choice to answer the Vocera phone on some of her rest breaks, Ms. Avara's rest breaks were interrupted by calls on her Vocera phone.

#### ii. Alexis Babbes

Defendant alleges that because Ms. Babbes testified that she responded to Vocera calls on her break by her own personal choice (Babbes Dec., ¶15) even though she knew that she was "not supposed to do any work or look at the phone or answer the pages during [her] break" that her testimony was consistent with her declaration.

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

Babbes Depo Tr. 38:22 – 39:7. However, Defendant's claim is misguided. Plaintiff merely found that despite her personal choice to answer the Vocera calls while on her breaks, Ms. Babbes was, at times, interrupted with Vocera pages on her breaks.

Ms. Babbes' deposition testimony also directly contradicted her declaration when she testified that she was supposed to leave her shoes at the hospital (Babbes Depo Tr. 43:23 – 44:10). In her declaration, Ms. Babbes testified that she could wear her work shoes out of the hospital, in everyday life, as long as she covered her shoes with cloth booties. Babbes Dec., ¶16. Defendant did not address this inconsistency, but it further demonstrates that Ms. Babbes' declaration conflicts with her deposition testimony.

### iii. Nicole Bender

Defendant alleges that Ms. Bender's deposition testimony is not contradictory to her declaration testimony with regard to Paragraph 3 of her declaration ("I understand that signing this declaration may impact or reduce my recovery in these lawsuits."). However, Ms. Bender contradicts this contention many times through her deposition, going so far as to claim she should have declined to provide a declaration if she knew that her potential recovery as a class member could be adversely impacted based on her testimony. Bender Depo Tr. 35:22-36:9; 51:19-20; 52:11-13; 53:4-8. Ms. Bender's contentions are not consistent with her statement in Paragraph 3, that she was aware of her adverse interests and wanted to provide a declaration anyways.

Defendant's contention that Counsel did not mislead Ms. Bender when she was told her that her interests as a potential class member were adverse to Defendant's interests is inconsistent with Ms. Bender's deposition testimony. Throughout her deposition, Ms. Bender did not understand that her declaration could adversely affect her interests in recovery as a class member, and admitted that since "nobody discussed that with me… I wouldn't have even answered any questions if that was stated in the very beginning." Bender Depo Tr. 35:22-36:9; 52:11-13. Defendant further attempts to blame Ms. Bender's failure to understand her adverse interests on not reviewing the

[PROPOSED] ORDER GRANTING MOTION TO STRIKE DEFENDANT'S CLASS MEMBER DECLARATIONS

declaration before signing. Dkt 60, at pg. 15. Ms. Bender was told to review the declaration and was provided Counsel's phone number, but this topic was allegedly discussed when "skimming" through the Who We Are statement. Duester Dec., Dkt 60-2, ¶8; Bender Depo Tr. 38:16-22. Even though Ms. Bender should have reviewed her declaration before signing it, any misunderstanding of her adverse interest to Defendant should have been explained by Counsel during the review of the Who We Are statement.

### iv. Nicole Dolstra

Defendant contends that because Ms. Dolstra's deposition testimony was consistent with her declaration where on "rare occasions, we do not receive a break…" Dolstra Dec., ¶6. Ms. Dolstra's testimony that she had lately missed breaks and had to ask for premiums remains consistent with the Meal and Rest Break Policy requiring premiums to be requested, but demonstrates that when short-staffed, Ms. Dolstra's department would not receive breaks.

### v. Bradly Halterman

Defendant claims that the Motion to Strike failed to identify the inconsistencies between Mr. Halterman's sworn declaration and deposition testimony. However, Plaintiff clearly found that Mr. Halterman was not aware that his declaration may affect any potential recovery he may receive in the lawsuit. (Halterman Depo Tr. 37:11-16), but testified that he was aware that his declaration would be used against the Complaint that was filed. Halterman Depo Tr. 31:18 – 32:2. This opposes the contention in his declaration that he understood that signing his declaration may impact or reduce his recovery in these lawsuits. Halterman Dec., ¶3. Based on the disconnect between Mr. Halterman's unfamiliarity with his role as a potential class member and the declaration boldly asserting his understanding that he was a class member, the declaration does not appear to be "as close to [his exact words] as possible." Halterman Depo Tr. 51:17-25.

///

-11-

1   Plaintiffs' counsel was able to identify many key inconsistencies between the

2   declarations provided by Defendant in support of its Opposition papers and the

3   testimony given by those declarants in their depositions. Despite blanket confirmations

4   of their experiences, the testimony provided by the declarants demonstrates that many

5   of the contentions made in the declarations did not accurately reflect their personal

6   knowledge of the cases at hand.

7   **III.   CONCLUSION**

8   Respectfully, Plaintiff urges this Court to Grant Plaintiff's Motion to Strike the

9   Declarations.

10

11   Dated: August 19, 2021                    **QUINTILONE & ASSOCIATES**

12

13

14

15                             By: _____

16                                   RICHARD E. QUINTILONE II

17                                   JEFFREY T. GREEN
                                     Attorneys for Plaintiffs Jennifer Ward and Sacora
18                                   Besabe, on behalf of themselves and all others
                                     similarly situated
19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, the undersigned, declare as follows:

I am a citizen of the United States, over the age of 18 years, and not a party to the within action.  I am an employee of or agent for Quintilone & Associates, whose business address is 22974 El Toro Rd., Suite 100, Lake Forest, CA 92630-4961.

On **the date below,** I served the foregoing document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DECLARATIONS RELIED UPON IN DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR CLASS AND CONDITIONAL CERTIFICATION**

on the following parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

_____  *(BY MAIL)* I caused a true copy of each document, placed in a sealed envelope with postage fully paid, to be placed in the United States mail at Lake Forest, California.  I am "readily familiar" with this firm's business practice for collection and processing of mail, that in the ordinary course of business said document(s) would be deposited with the U.S. Postal Service on that same day.  I understand that the service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained on this affidavit.

_____  *(BY PERSONAL SERVICE)* I delivered each such document by hand to Brian Long, Esq.

_____  *(BY OVERNIGHT DELIVERY)* I caused a true copy of each document, placed in a sealed envelope with delivery fees provided for, to be deposited in a box regularly maintained by Federal Express or Overnight Express.  I am readily familiar with this firm's practice for collection and processing of documents for overnight delivery and know that in the ordinary course of Quintilone & Associates' business practice the document(s) described above will be deposited in a box or other facility regularly maintained by Federal Express or Overnight Express or delivered to a courier or driver authorized by Federal Express or Overnight Express to receive documents on the same date it is placed at Quintilone & Associates for collection.

\_\_X\_\_\_  *(BY E-MAIL)* I caused a true and correct copy of each document to be delivered by the Firm's and/or Court's Electronic Mail system.

_____  *(BY FACSIMILE)* By use of facsimile machine number 949.458.9679, I served a copy of the within document(s) on the above interested parties at the facsimile numbers listed above.  The transmission was reported as complete and without error.  The transmission report was properly issued by the transmitting facsimile machine.

Executed on **August 19, 2021,** at **Lake Forest, California.**

\_\_X\_\_\_\_\_  (**FEDERAL**) I declare under penalty of perjury that the above is true and correct.

_____  (**STATE**) I declare under penalty of perjury that the above is true and correct.

_____
JEFFREY T. GREEN

-1-

PROOF OF SERVICE

## <u>SERVICE LIST</u>

Thomas E. Geidt, Esq.                          Attorneys for Defendant- SUTTER
Teresa W. Ghali, Esq.                          VALLEY HOSPITALS
GBG LLP
601 Montgomery St., Ste. 1150
San Francisco, CA 94111
Telephone: (415) 603-5003
Facsimile: (415) 840-7210
Email: tomgeidt@gbgllp.com;
teresaghali@gbgllp.com;

**Q&A Case No. 18.01426**

-2-

PROOF OF SERVICE