UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Ward, et al., | No. 2:19-cv-00581-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| Sutter Valley Hospitals, | |
| Defendant. | |

Plaintiffs Jennifer Ward and Sacora Besabe bring this wage and hour action on behalf of surgical technicians against defendant Sutter Valley Hospitals.  Five motions currently are pending before the court: 1) defendant's motion to exclude testimony; 2) defendant's motion to strike supplemental declaration; 3) plaintiffs' motion to strike class member declarations; 4) plaintiffs' motion for class certification; and, 5) plaintiffs' motion for conditional certification of collective action.  As explained below, the court **denies** defendant's first motion to exclude testimony; **grants** defendant's second motion to strike supplemental declaration; **denies** plaintiffs' third motion to strike class member declarations; **denies** plaintiffs' fourth motion for class certification; and **denies** plaintiffs' fifth motion for conditional certification of collective action.

/////

1    **I.      BACKGROUND**

2        Sutter Valley Hospitals (Sutter) operates twenty-four hospitals and healthcare facilities.

3    First Am. Compl. (FAC) ¶ 7, ECF No. 28.  Sutter employs more than 53,000 individuals, with

4    more than 400 being surgical technicians who work in California.  Quintilone Decl. ¶ 10, ECF

5    No. 43-2.  Jennifer Ward started working for Sutter in February 2007 as a surgical technician at

6    Capitol Pavilion.  FAC ¶ 11.  Ward also fulfills the responsibilities of a surgical coordinator.

7    Ward Decl. ¶ 8, ECF No. 43-4.  Sacora Besabe started working for Sutter in February 2007 as a

8    surgical technician at Sutter Memorial.  FAC ¶ 19.  Plaintiffs claim they often work overtime and

9    miss meal and rest breaks because Sutter's facilities are understaffed, *id.* ¶¶ 23–30, and Sutter

10   consistently has denied overtime payment requests, Class Mem. at 3, ECF No. 43-1.  When

11   employees did not clock out and accrued overtime, management would alter the punch times.  *Id*.

12   at 4; Crozier Decl. ¶ 12, Green Decl. Ex. 8, 43-3.  Plaintiffs also allege they did not have proper

13   meal breaks because Sutter required plaintiffs to stay on-call in case they were needed, and breaks

14   were frequently interrupted.  FAC ¶ 16.  Plaintiffs allege Sutter required plaintiffs to record their

15   time as if their breaks and hours were compliant with the Labor Code.  *Id*. ¶ 21.  Sutter required

16   plaintiffs to purchase uniform items and use personal cell phones for job duties.  *Id.* ¶ 27.  Sutter

17   did not reimburse these expenses.  *Id*.

18       Ward and Besabe brought this putative class action in the Superior Court of Sacramento

19   County.  Not. of Removal at 1, ECF No. 1.  Defendant removed.  *Id.*  Plaintiffs then filed the

20   operative first amended complaint asserting nine claims: 1) failure to pay overtime and minimum

21   wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 203, 206, 207 (FLSA); 2) failure

22   to pay overtime and minimum wage in violation of the California Labor Code, Cal. Lab. Code

23   §§ 510, 1194, 1198; 3) failure to provide meal periods in violation of the California Labor Code,

24   Cal. Lab. Code §§ 226.7 & 512; 4) failure to provide rest periods in violation of the California

25   Labor Code, Cal. Lab. Code §§ 226.7 & 512; 5) failure to provide itemized statements in

26   violation of the California Labor Code, Cal. Lab. Code §§ 226 & 1174; 6) failure to pay wages

27   twice a month in violation of the California Labor Code, Cal. Lab. Code § 204; 7) failure to

28   reimburse business expenses in violation of the California Labor Code, Cal. Lab. Code §§ 2800–

2

2802; 8) failure to pay termination pay in violation of the California Labor Code, Cal. Lab. Code §§ 201–203; and 9) unlawful competition, unlawful, and fraudulent business practices in violation of California Business and Professions Code section 17200, *et seq*. *See generally* FAC.

Plaintiffs define their proposed class as follows:

> All persons who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt Surgical Technicians, or in related positions ("Class Members").

FAC ¶ 42.

Plaintiffs propose the following twelve subclasses:

- Unpaid Overtime Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and were not paid overtime for hours worked beyond eight (8) hours in a single day or for hours worked beyond 40 in a single week pursuant to applicable the Labor Code and applicable IWC Wage Orders.

- Unpaid Wage Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and were not paid all hours worked pursuant to applicable Labor Code sections 510, 511, 1174, 1174.5, 1194 and 1198.

- Meal Break Subclass 1.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and have not been provided a meal period for every five (5) hours or major fraction thereof worked per day, and were not provided one (1) hour's pay for each day on which such meal period was not provided pursuant to Labor Code sections 226.7 and 512.

- Meal Break Subclass 2.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and who worked over ten (10) hours in a shift and did not receive a second meal period;

- Meal Break Subclass 3.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt

employees and who were required to sign meal waivers as a condition of employment when hired by Defendant.

- Meal Break Subclass 4.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and, who signed meal waivers for the second meal and worked over twelve (12) hours in a shift.

- Rest Period Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as nonexempt employees and have not been provided a rest period for every three and a half (3.5) hours worked per day, and were not provided compensation of one (1) hour's pay for each day on which such rest period was not provided pursuant to Labor Code sections 226.7 and 512.

- Paystub Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and were not provided an itemized statement accurately showing total hours worked, the applicable hourly rates in effect during each pay period and the corresponding hours worked at each rate pursuant to Labor Code sections 226 and 1174.

- Wages Twice Monthly Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and were not provided all wages twice monthly pursuant to Labor Code section 204.

- Expense Reimbursement Class.  All Class Members who were not reimbursed for phone, uniform and other expenses incurred in the discharge of their duties in connection with their employment with Defendant.

- Failure to Pay Termination Pay Subclass.  All Class Members who are employed or have been employed by Defendant in the State of California who, for the four years prior to the filing of this class action to the present, have worked as non-exempt employees and were not provided all wages and applicable penalties due to them pursuant to the Labor Code and applicable IWC Wage Orders.

- California Business and Professional Labor  Code § 17200 Subclass. All Class Members who are employed or have been employed by Defendant in the State of California who, have worked as non-exempt employees and who were subjected to Defendant's unlawful, unfair or fraudulent business acts or practices

4

1    in the form of Labor Code violations regarding overtime, meal periods, rest
2    periods, expense reimbursement or minimum wages and/or waiting time
3    penalties.

4    *Id.* ¶ 42(a–l).

5    The five, fully briefed motions  currently pending before the court are supported and

6    opposed in the following documents:

7    • Defendant's motion to exclude testimony.  Exclude Expert Mot., ECF No. 47;
8    Exclude Expert Mem., ECF No. 47-1. Plaintiffs oppose.  Exclude Expert Opp'n,
9    ECF No. 51.  Defendant replied.  Exclude Expert Reply, ECF No. 58.

10   • Motion to strike supplemental declaration.  Strike Suppl. Decl. Mot., ECF No.
11   57; Strike Suppl. Decl. Mem., ECF No. 57-1. Plaintiff's oppose.  Strike Suppl.
12   Decl. Opp'n, ECF No. 59.  Defendant replied.  Strike Suppl. Decl. Reply, ECF
13   No. 63.

14   • Plaintiffs' motion to strike class member declarations.  Strike Decl. Mot., ECF
15   No. 53; Strike Decl. Mem., ECF No. 53-1.  Defendant opposes.  Strike Decl.
16   Opp'n, ECF No. 60.  Plaintiffs replied.  Strike Decl. Reply, ECF No. 62.

17   • Plaintiffs' motion for class certification.  Class Mot., ECF No. 43; Class Mem.,
18   ECF No. 43-1. Defendant opposes; Class Opp'n, ECF No. 48. Plaintiffs replied.
19   Class Reply, ECF No. 50.

20   • Plaintiffs' motion for conditional certification of collective action.  Collective
21   Mot., ECF No. 44; Mem., ECF No. 44-1. Defendant opposes; Collective Opp'n,
22   ECF No. 49.  Plaintiffs did not reply, but submitted an intent to rely on the
23   decision in *Martinez v. John Muir Health*, 17-5779, 2018 WL 1524063, at *1
24   (N.D. Cal. Mar. 28, 2018).  ECF No. 55.

25   On September 9, 2021, the court held a hearing on the motions, with Richard Quintilone,

26   II, and Jeffrey Green appearing for plaintiffs and Thomas Geidt and Teresa Ghali for defendant.

27   Min. Order, ECF No. 65.  The court submitted the matter following hearing.

## II.    DEFENSE MOTION TO EXCLUDE EXPERT TESTIMONY

29   As part of the motion for class certification for their "claims for off-the-clock work, meal

30   and rest break violations, [and] expense reimbursements" plaintiffs provide an expert declaration

31   from Bennett Berger who identifies himself as an "expert data analyst."  Exclude Expert Mem.

32   at 1. Sutter moves to exclude Berger's testimony, arguing it is irrelevant and inadmissible and

1    Berger does not qualify as an expert under the familiar *Daubert*[1] test.  Exclude Expert Mem. at 1.

2    Plaintiffs oppose, arguing Berger's "declaration is reliable and relevant to the facts of this case."

3    Exclude Expert Opp'n at 2, and Berger qualifies as an expert in this case "to review and analyze a

4    set of punch records, payroll records, and audit trails, contained in Excel and/or PDF files," *id*. at

5    3.

6        In its analysis the court applies the evidentiary standard set forth in *Daubert v. Merrell*

7    *Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  "*Daubert* does not require a court to admit or to

8    exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude

9    evidence based on its scientific reliability and relevance."  *Ellis v. Costco Wholesale Corp.*, 657

10   F.3d 970, 982 (9th Cir. 2011) (citing 509 U.S. at 589–90).

11       Scientific evidence is reliable if the principles and methodology used by an expert
12       are grounded in the methods of science. . . .  The focus of the district court's analysis
13       must be solely on principles and methodology, not on the conclusions that they
14       generate, and the court's task is to analyze not what the experts say, but what basis
15       they have for saying it. . . .  In conducting this analysis, the district court may
16       consider whether the theory or technique employed by the expert is generally
17       accepted in the scientific community; whether it's been subjected to peer review and
18       publication; whether it can be and has been tested; and whether the known or
19       potential rate of error is acceptable.

20   *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–85 (9th Cir. 2020) (citations and marks

21   omitted).  "[T]he district court [is] required to resolve any factual disputes necessary to determine

22   whether there was a common pattern and practice that could affect the class *as a whole*."  *Ellis*,

23   657 F.3d at 983 (emphasis in original).  "[T]he district court can exclude" an expert's opinion "if

24   the expert fails to identify and defend the reasons" for the expert's conclusions.  *Lust ex rel. Lust*

25   *v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

26       Berger's education and experience qualify him as an expert in data collection and

27   analysis.  *See* Berger Decl. ¶¶ 4–5, ECF No. 43-5 (Berger has a Bachelor's degree in Business

28   Management Economics from the University of California, Santa Cruz and is "a partner and

29   senior data analyst of Berger Consulting Group" where he has "been engaged in over 1,750

30   employment and labor law class-action litigation matters to consult on data collection and

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

analysis").  Berger's "assignment [in this matter] is twofold: (1) demonstrate how the data that Plaintiffs and the Class seek could be used to calculate damage under Plaintiffs' liability theories; and (2) provide a road map for calculating damages at trial." *Id.* ¶ 12.  In his deposition testimony, Berger confirmed the pay and time data he received from defendant was "not sufficient to calculate damages . . . rather, any potential damages model [would] hinge on a hypothetical survey . . . or on other assumptions not yet provided by [p]laintiffs' counsel." Exclude Expert Mem. at 1.  At the time of defendants' filing their motion, Berger had not provided any "road map for calculating damages at trial."  *Id.* at 1; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34–35 (2013) ("under the proper standard for evaluating certification, respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis . . . .  Calculations need not be exact, . . . but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . . .").  "Nor ha[d] he submitted an expert report memorializing his opinions. . ."  Exclude Expert Mem. at 1.  Despite these omissions, defendant does not claim to have suffered any prejudice.  The court denies the motion to exclude Berger's testimony entirely; however, the deficiencies the defense points to will impact the weight this court places on his testimony at the certification stage.

### III.   DEFENSE MOTION TO STRIKE SUPPLEMENTAL DECLARATION

Plaintiffs attached a supplemental declaration of Berger to their reply in support of Class Certification.  ECF No. 50-6.  Defendant seeks to strike the declaration in its entirety and seeks leave to file a motion for sanctions, arguing plaintiffs are flouting the court's deadlines.  *See generally* Strike Suppl. Decl. Mem.  Defendant argues the supplemental declaration amounts to plaintiffs' granting themselves an unilateral "extension of time to seek certification . . . [and an ] attempt to patch up some of the gaping holes in their opening motion."  Strike Suppl. Decl. Mem. at 1.  Plaintiffs oppose the motion, arguing there is no prejudice to the defendant.  Plaintiffs' counsel notified defendant's counsel that Berger created a damages model for Ward and Besabe on June 28, 2021, and say they provided an opportunity for defendant's counsel "to examine and /////

1    continue the Opposition date to incorporate the findings into their Opposition papers."  Strike

2    Suppl. Decl. Opp'n at 2; Green Decl. ¶ 6, ECF No. 59-1.

3           "[R]eply briefs are limited in scope to matters either raised by the opposition or

4    unforeseen at the time of the original motion."  *Burnham v. City of Rohnert Park*, No. 92–1439,

5    1992 WL 672965, at *1 n. 2 (N.D. Cal. May 18, 1992) (citing *Lujan v. National Wildlife*

6    *Federation*, 497 U.S. 871 (1990)).  "It is generally improper for a moving party to introduce new

7    facts or different legal arguments in a reply brief."  *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D.

8    197, 206 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No.

9    2:13-1282, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *aff'd*, 690 F. App'x 526 (9th Cir.

10   2017) (citations omitted) (disregarding additional declarations attached to reply brief).

11   Fundamentally, "[n]ew evidence submitted as part of a reply is improper because it does not

12   allow the defendant an adequate opportunity to respond."  *Townsend v. Monster Beverage Corp.*,

13   303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) (quotation marks and citation omitted); *Provenz v.*

14   *Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

15          Effectively accepting the limitations applicable to a reply, plaintiffs argue the declaration

16   is merely supplemental because Berger does not "provide any new methods for calculating

17   damages, any new documents that he intended to examine, or any new causes of action."  Strike

18   Suppl. Decl. Opp'n at 3.  But plaintiffs do not justify why Berger's analysis could not have been

19   provided earlier.  And defendant argues the declaration is not supplemental but rather provides

20   new information, because Berger's original declaration and deposition testimony did not provide

21   any method for calculating damages at all.  Strike Suppl. Decl. Reply at 2.

22          The court agrees with the defendant's characterization; the declaration is not supplemental

23   and introduces new evidence in providing for the first time Berger's analysis of "[p]laintiffs' time

24   and pay records."  Strike Suppl. Decl. Mem. at 1 & 5.  Accordingly, the court strikes the

25   supplemental declaration.

26   **IV.   PLAINTIFFS' MOTION TO EXCLUDE DECLARATIONS**

27          Plaintiffs move to strike the declarations defendant provided in support of its opposition to

28   class and collective certification.  Strike Decl. Mem. at 1.  Plaintiffs claim defendant acquired the

declarations through coercive and deceptive tactics.  *Id*.  Defendant counters, arguing "the record before the [c]ourt completely refutes [p]laintiffs' allegations of coercion."  Strike Decl. Opp'n at 1.

At the pre-certification stage of an FLSA collective action, "[a]s a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 236 (C.D. Cal. 2007).  "[I]nherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations of employers' ability to speak with potential class members prior to certification."  *Quezada v. Schneider Logistics Transloading & Distribution*, No. 12-2188, 2013 WL 1296761, at *4 (C.D. Cal. Mar. 25, 2013) (quoting *Longcrier*, 595 F. Supp. 2d at 1227).  In considering whether pre-certification communications are deceptive or coercive, courts consider: whether the party adequately informed the class members about "(1) the details underlying the lawsuit, (2) the nature and purpose of the communications, and (3) the fact that any defense attorneys conducting the communications represent the employer and not the employee."  *Id*.  "Additionally, federal courts in California have found that any violation of California Rule of Professional Conduct 3–600 weighs in favor of finding that improper communications have taken place."  *Id.* (citation omitted).

Plaintiffs assert the declarations defendant has submitted are "the result of . . . coercive and deceptive meetings."  Strike Decl. Mem. at 1.  Specifically, plaintiffs say that in obtaining the declarations, "[d]efense counsel did not disclose . . . the conflict between defense counsel and Sutter Valley Hospitals. . . and the class members. . . and used written purported 'waiver' forms which did not comply with the conflict waiver rules in the [California] Rules of Professional Conduct. . . . ."  Strike Decl. Mem. at 1.  Defendant argues the record, "including the deposition testimony by the five [possible class members] deposed by [p]laintiffs' counsel, establishes that [defense] and its counsel followed all proper procedures in conducting employee interviews."  Strike Decl. Opp'n at 1.

9

1    The court declines to strike the declarations relied on by defendant.  Each declarant signed

2    the "Who We Are And Purpose Of The Interview" form, which informed the declarant about this

3    lawsuit, his or her status as a potential class member, and the defendant's adverse interest.  Strike

4    Decl. Opp'n at 1; Ghali Decl. Exs. A–F, ECF No. 60-1; *compare Quezada*, 2013 WL 1296761, at

5    \*5 (noting deceptive tactics because "the employees were never told that the purpose of the

6    interviews was to gather evidence to be used against the employees in a lawsuit. . .  [or] that the

7    document they were asked to sign . . . was a sworn declaration").  Plaintiffs contend there is

8    evidence, including "live testimony" that "at least some of the employees did not fully understand

9    the meaning of legal concepts like a class action or a conflict of interest (or what it meant to

10   waive one) and had trouble following attorney questions and explanations in general."  Strike

11   Decl. Mem. at 4 (citing *Richardson v. Interstate Hotels & Resorts, Inc.*, No.16-6772, 2018 WL

12   1258192, at \*7 (N.D. Cal. Mar. 12, 2018)).  But they do not point any particular portion of the

13   record to support this argument.  Plaintiff does not show that any class member misunderstood

14   legal concepts or the attorney's questions here.  *Compare Richardson*, 2018 WL 1258192, at \*7

15   (noting "some of the employees required interpreters").

16   Plaintiffs also seek to strike the declarations under the sham affidavit rule.  Strike Decl.

17   Mem. at 17.  The Ninth Circuit has placed two limitations on striking contradictory statements

18   under the sham affidavit rule.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir.

19   2009).  The rule can only be invoked if 1) "the district court [ ] make[s] a factual determination

20   that the contradiction was actually a sham," and 2) "the inconsistency between a party's

21   deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking

22   the affidavit."  *Id.* (citations and marks omitted).  "[T]he non-moving party is not precluded from

23   elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on

24   deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly

25   discovered evidence afford no basis for excluding an opposition affidavit."  *Messick v. Horizon

26   Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

27   The testimony the plaintiffs point to here as the basis for striking the decelerations amount

28   to minor inconsistencies or elaborations that do not form a basis for exclusion as sham affidavits,

1   with one minor exception.  *See, e.g.*, Strike Decl. Mem. at 14 (noting Nicole Dolstra's declaration

2   saying that "[o]n the rare occasions, we do not receive a break, I have asked and received a

3   premium" while she testified at deposition she has "had two or three occasions where [she] had to

4   ask for a missed break.") (citations omitted).  The exception, which defendants conceded at

5   hearing, is that the court should strike a sentence of Nicole Bender's declaration stating "[she]

6   ha[s] read and been offered a copy of the document entitled, "Who We Are and Purpose of the

7   Interview."  Bender Decl. ¶ 2, Ex. 3-D, ECF No. 48-16.  As Bender testified in her deposition that

8   she did not read her declaration in its entirety, Bender Dep. Tr. 38:16-22, Quintilone Decl. Ex. 7,

9   ECF No. 53-2, the court therefore strikes this sentence but otherwise denies this motion.

10   **V.   CLASS CERTIFICATION**

11       Plaintiffs seek class certification for a class of "those employed during the proposed class

12   period" who can be identified with "Sutter's records, through job titles, and dates of

13   employment."  Class Mem. at 8.  As noted above, plaintiffs also propose twelve subclasses.  *Id*. at

14   8–9.  Plaintiffs seek certification with respect to their claims for failure to play overtime, failure

15   to provide meal and rest breaks, failure to provide reimbursement for business expenses, failure to

16   provide accurate wage statements, and failure to timely pay wages at termination.  *Id*. at 1–3.

17   Defendant opposes, arguing no claim is suitable for class certification.  *See generally* Class

18   Opp'n.

19       **A.   Legal Standard**

20       Litigation by a class is "an exception to the usual rule" that only individual named parties

21   bring and conduct lawsuits.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)

22   (citation and internal quotation marks omitted).  Only when a class action "promot[es] . . .

23   efficiency and economy of litigation," should a motion for certification be granted.  *Crown, Cork*

24   *& Seal Co. v. Parker*, 462 U.S. 345, 349 (1983).  To be eligible for certification, the proposed

25   class must be "precise, objective, and presently ascertainable."  *Williams v. Oberon Media, Inc.*,

26   No. 09-8764, 2010 WL 8453723, at *2 (C.D.Cal. Apr. 19, 2010), *aff'd*, 468 F. App'x 768 (9th

27   Cir. 2012); *see also* 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1760

28   /////

1    3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the

2    outset of the litigation, a class will be deemed to exist." (citations omitted)).

3        To be certified, a putative class must meet the threshold requirements of Federal Rule of

4    Civil Procedure 23(a) and fall into one of the class categories of Rule 23(b).  *Leyva v. Medline*

5    *Industries Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Here the plaintiffs seek certification of a class

6    in which common questions of law and fact predominate and a class action is the superior means

7    of litigation.  Class Mem. at 8 (citing Rule 23(b)(3)).

8        Rule 23(a) imposes four requirements on every class. First, the class must be "so

9    numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Second,

10   questions of law or fact must be common to the class.  *Id*. R. 23(a)(2).  Third, the named

11   representatives' claims or defenses must be typical of those of the class.  *Id*. R. 23(a)(3).  Fourth,

12   the representatives must "fairly and adequately protect the interests of the class."  *Id*. R. 23(a)(4).

13       The putative class must also meet the two requirements of Rule 23(b)(3): 1) "the questions

14   of law or fact common to class members predominate over any questions affecting only

15   individual members," and 2) "that a class action is superior to other available methods for fairly

16   and efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more demanding,"

17   than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir.

18   2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

19       "The party seeking class certification bears the burden of demonstrating that the

20   requirements of Rules 23(a) and (b) are met."  *United Steel, Paper & Forestry, Rubber, Mfg.*

21   *Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO C.L.C. v. ConocoPhillips Co.*, 593

22   F.3d 802, 807 (9th Cir.2010).  The court must verify the putative class's "[a]ctual, not presumed,

23   conformance with Rule 23(a). . . ."  *Wal-Mart*, 564 U.S. at 351 (citation omitted).  This inquiry

24   often overlaps with consideration of the merits of the plaintiffs' substantive claims.  *Id*. at 351–

25   52.

26   /////

12

**B.     Analysis**

       **1.     Ascertainability**

Although not raised as an issue by defendant, the court notes the proposed class and subclass definitions pose an ascertainability issue.  The use of the language "to the present" in defining the class period appears to "create[] a moving target and presents potential case management problems."  *Gomez v. J. Jacobo Farm Lab. Contractor, Inc*., 334 F.R.D. 234, 250 (E.D. Cal. 2019), *modified on reconsideration*, No. 1:15-1489, 2020 WL 1911544 (E.D. Cal. Apr. 20, 2020), *and modified*, No. 1:15-1489, 2021 WL 431402 (E.D. Cal. Feb. 8, 2021). Plaintiffs may wish to consider defining any potential class by adding an end date.

       **2.     Numerosity**

"In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citations omitted). Here, there is no dispute that numerosity is satisfied, given Sutter's employing "approximately . . . 400 putative Surgical technician Class Members in California."  Class Mem. at 9; Class Opp'n at 1.

       **3.     Commonality**

To satisfy the commonality requirement, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  "[E]ven a single common question will" satisfy the requirement.  *Id*. at 359 (alterations omitted).  "[W]here there is no common policy or practice on the part of the employer, class certification is unavailable."  *Wren v. RGIS Inventory Specialist*, 256 F.R.D 180, 204 (N.D. Cal. Feb. 5, 2009).

Plaintiffs assert seven of their nine claims present common questions of law and fact. Class Mem. at 10–18.  In reply, they insist "[a]mple documentary evidence shows that the [class members] routinely worked off the clock, and despite management knowing about the work, did not always pay employees overtime rates."  Class Reply at 5.  In support of their motion for class

1    certification plaintiffs attach twenty-nine declarations by potential class members.  All Class

2    Decls., Green Decl., 43-3.[2]

3          Defendant claims "[p]laintiffs cannot show the existence of any common unlawful policy

4    or practice that would resolve class-wide liability through any form of common proof."  Class

5    Opp'n at 1.  Defendant asserts their baseline companywide policies are facially valid and that

6    implementation of the policies can "vary widely by hospital, by shift, and by day, depending on

7    the needs of the department."  *Id*.  It argues resolving any claim for each surgical technician

8    would "require individualized proof that she in fact did the work, why she did the work, why she

9    did not use the [system for receiving compensation], and whether her managers had reason to

10   know that she was in fact working without pay."  *Id*. at 9 (quoting *York v. Starbucks Corp.*, No.

11   08-7919, 2011 WL 8199987, at *28–30 (C.D. Cal. Nov. 23, 2011)).  Finally, defendant argues the

12   court should deny class certification as to each claim because plaintiffs' "boilerplate putative

13   class member declarations are woefully deficient[,] . . . devoid of any foundational facts and

14   merely parrot the conclusory allegations in the First Amended Complaint."  Class Opp'n at 2.

15         Here, the court finds plaintiffs' declarations are too vague and conclusory to imply an

16   unlawful practice that can satisfy the commonality requirement.  Courts have "previously denied

17   [class certification] when the supporting declarations were nearly identical, vague, conclusory,

18   silent where one would expect important detail, and contradictory to allegations in the

19   complaint."  *Kuzich v. HomeStreet Bank*, No. 17-2902, 2018 WL 3872191, at *2 (D. Ariz.

20   Aug. 15, 2018) (citations omitted).  Even a cursory review of plaintiffs' declarations confirms

21   they "are largely identical in form and substance, strongly suggesting that they are boilerplate or

22   cookie-cutter declarations apparently drafted by counsel."  *See Gomez*, 334 F.R.D. at 244 n.2.

23   The declarations share much of the same language.  For example, paragraph five of every

24   declaration reads as follows: "[g]iven the nature of my job, I am rarely afforded a set lunch time."

---

[2] These declarations include those of Jennifer Ackie, Michkaryn Alexis, Thu-Hong Anderson, Sacora Besabe, Heather Brill-Lehn, Maria Castillo, Ashley Connitt, Michelle Crozier, Kathrina DeGuzman, Michael Dimailig, Brian Estrada, Lily Fritz, Matthew Galli, Myron Golden, Stephanie Hall, Temesha Ivy, Alice Karrasch, Kemberly Martins, Michelle McKnight, Francisco Miranda, Rebecca Moore, Melinda Moore, Adrien Pocklington, Yvette Savalza, Dwight Sneed, Jr., Alena Tagintsev, Stanislav Tatar, Raymond Tran, Jeunne Victor.

1  Class Mem. at 4 (citing All Class Decls. ¶ 5).  The only meaningful distinctions among the

2  declarations are statements noting which the Sutter facility where the declarant works and the

3  details of his or her position such as salary and hours.  For example, all declarants say they were

4  not "afforded a set time for lunch," but four declarants say their lunches were "shortened by a

5  surgeon if a surgery [wa]s beginning."  Pocklington Decl. ¶ 5; Sneed Decl. ¶ 5; Tagintsev Decl. ¶

6  5; Victor Decl. ¶ 5.  The remaining declarants say their lunch breaks were disrupted because they

7  were "asked to clean [or prepare] rooms or address other on-campus emergencies."  *See* Ackie

8  Decl. ¶ 5; Alexis Decl. ¶ 5; Anderson Decl. ¶ 5; Brill-Lehn Decl. ¶ 5; Castillo Decl. ¶ 5; Connitt

9  Decl. ¶ 5; Crozier Decl. ¶ 5; DeGuzman Decl. ¶ 5; Dimailig Decl. ¶ 5; Estrada Decl. ¶ 5; Galli

10  Decl. ¶ 5; Golden Decl. ¶ 5; Hall Decl. ¶ 5; Ivy Decl. ¶ 5; Karrasch Decl. ¶ 5; Martins Decl. ¶ 5;

11  McKnight Decl. ¶ 5; Miranda Decl. ¶ 5; Moore Decl. ¶ 5; Savalza Decl. ¶ 5; Tatar Decl. ¶ 5; Tran

12  Decl. ¶ 5.

13       The reliability concerns are heightened given that portions of plaintiffs' declarations

14  appear to be contradicted by the respective declarant's deposition testimony.  *Gomez*, 334 F.R.D.

15  at 244 n. 2.  Three declarants retracted some statements in their declarations.  *See* Compendium of

16  Evid. at Tab 2, ECF No. 48-16; Class Opp'n at 9.  For example, Thu-Hong Anderson's

17  declaration says that "[o]n the occasions when I received a meal break after five hours into my

18  shift, my managers at Sutter Valley Hospitals would tell me to record that I had taken a break

19  before five hours in order to avoid the records reflecting a violation."  Anderson Decl. ¶ 6.[3]  But

20  while being deposed, Anderson said this never happened and she did not know why this statement

21  was in her declaration.  Anderson Dep. at 58:8–17, ECF No. 48-16.  Given these flaws in the

22  record,  plaintiffs have not provided a plausible factual basis for the court's finding a common

23  practice that affects all the putative class members.  *See Martinez v. Money Source, Inc*., No.

24  2:19-60, 2020 WL 5289851, at *4 (C.D. Cal. June 9, 2020) ("It is not Plaintiff's burden to show

25  /////

---

[3] Seven other declarations use nearly identical language.  *See* Alexis Decl. ¶6; Besabe
Decl. ¶ 6; Connitt Decl. ¶ 6; Estrada Decl. ¶ 6; Golden Decl. ¶ 6; Martins Decl. ¶ 6; Tran Decl.
¶ 6.

1    any specific number of potential claimants experienced the alleged policies, but Plaintiff must

2    provide a plausible factual basis whereby the Court can infer the policies actually exist.").

3        Even assuming plaintiffs' declarations are reliable, the record contains no common

4    evidence demonstrating that all the putative class members' claims can be resolved efficiently at

5    the same time.  "[A] common question is where the same evidence will suffice for each member

6    to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *See*

7    *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and internal quotation

8    marked omitted).  Rather, it appears here the wage and hour practices vary among defendant's

9    facilities.  And given that some class members testified they did not suffer the injuries plaintiffs

10   claim, plaintiffs have not shown that wage violations were not separate, isolated experiences.

11       **4.    Typicality**

12       Typicality requires that "the claims or defenses of representative parties are typical of the

13   claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Claims and defenses are "'typical' if

14   they are reasonably coextensive with those of absent class members; they need not be

15   substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).  "Measures of

16   typicality include 'whether other members have the same or similar injury, whether the action is

17   based on conduct . . . not unique to the named plaintiffs, and whether other class members have

18   been injured by the same course of conduct.'"  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d

19   1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir.

20   1992)).  "Typicality does not mean that the claims of the class representative[s] must be identical

21   or substantially identical to those of the absent class members."  *Staton v. Boeing Co.*, 327 F.3d

22   938, 957 (9th Cir. 2003) (citation and marks omitted.  "[C]ommonality and typicality

23   requirements of Rule 23(a) tend to merge."  *See Dukes*, 564 U.S. at 349 n.5.  The court is not

24   prepared to find claims and defenses of the proposed class are typical given the plaintiffs'

25   inability to establish commonality at this stage.

26       **5.    Adequacy**

27       Representatives of the proposed class must afford adequate representation to those class

28   members who are absent.  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018).

16

1    Courts consider two questions: first, whether there are any conflicts of interest between plaintiffs

2    and other class members, and second, whether the named plaintiffs and their counsel can be

3    expected to "prosecute the action vigorously on behalf of the class." *Id.*

4         There is some dispute regarding whether some of Ward's claims stem from her unique

5    responsibilities as a Surgical Coordinator.  Ward Decl. ¶¶ 9–11.  But the court finds neither

6    plaintiff appears to have conflicts with the rest of the class, *Id.* ¶ 5; Besabe Decl. ¶18, although

7    each may have claims in addition to those of the class, *see* Class Opp'n at 3; Newberg on Class

8    Action § 3:58 (6th ed.) ("conflict must be manifest at the time of certification rather than

9    dependent on some future event or turn in the litigation that might never occur").

10        Plaintiffs' counsel has significant experience prosecuting wage and hour class actions, and

11   nothing in the record suggests any conflicts of interest exist by virtue of counsel's representation.

12   *See* Quintilone Decl. ¶¶ 4, 36–40.

13        The proposed representation here is adequate.

14        **6.    Predominance and Superiority**

15        The plaintiffs request certification under Rule 23(b)(3).  A Rule 23(b)(3) class may be

16   certified only if (1) "the questions of law or fact common to class members predominate over any

17   questions affecting only individual members" and (2) "a class action is superior to other available

18   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The

19   predominance inquiry asks whether the common, aggregation-enabling, issues in the case are

20   more prevalent or important than the non-common, aggregation-defeating, individual issues."

21   *Bouaphakeo*, 577 U.S. at 453 (citation and internal quotation marks omitted).  "The superiority

22   inquiry. . . requires determination of whether the objectives of the particular class action

23   procedure will be achieved in the particular case," which "necessarily involves a comparative

24   evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d

25   1011, 1023 (9th Cir. 1998) (citation omitted).

26        Wage and hour classes and subclasses are likely to be certified under this standard when

27   "the major questions in [the] case arise from [the defendant's] alleged uniform failure to properly

28   calculate wages and overtime, account for meal periods and rest periods, and provide

17

1  reimbursements." *Smothers v. NorthStar Alarm Servs., LLC*, No. 2;17-548, 2019 WL 280294, at

2  *7 (E.D. Cal. Jan. 22, 2019).  This may be true even when some factual questions call for

3  individualized evidence.  *See, e.g., Pena*, 305 F.R.D. at 213–22. An employer's uniform policies

4  often predominate when they apply to all members of the putative class and when class members

5  did or do the same or similar work.  *See, e.g., Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952,

6  965–66 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7.

7          Here, the court cannot determine if the predominance and superiority are met given that

8  the plaintiffs have not demonstrated that wage violations are common across the potential class

9  and subclasses.  Therefore, the court denies class certification.

10 **VI.    FLSA COLLECTIVE**

11         Plaintiffs move to preliminarily certify the following FLSA collective:

12             All persons who are employed or have been employed by Sutter Valley Hospitals in
13             the State of California who, for the four years prior to the filing of this class action
14             on February 13, 2019 to the present, have worked as nonexempt Surgical
15             Technicians, or in related positions.

16 Collective Mem. at 2.

17         **A.    Legal Standard**

18         The FLSA establishes an opt-in collective action procedure for employees allegedly

19 denied wages and overtime pay.  *See* 29 U.S.C. § 216(b).  Under the FLSA, "one or more

20 employees" may file a civil action "in behalf of himself or themselves and other employees

21 similarly situated."  *Id*.

22         The FLSA does not define the term "similarly situated" but the Ninth Circuit has

23 interpreted that term.  *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110–17 (9th Cir.

24 2018).  After rejecting the "minority approach" among district courts, which "treat[ed] a

25 collective as an opt-in analogue to a Rule 23(b)(3) class," the panel also declined to wholly adopt

26 the majority "ad hoc" approach, which "applies a three-prong test that focuses on points of

27 potential factual or legal dissimilarity between party plaintiffs."  *Id*. at 1111–13 (emphasis

28 omitted).  The panel faulted the latter approach for "offer[ing] no clue as to what kinds of

29 'similarity' matter under the FLSA," and its "open-ended inquiry into the procedural benefits of

collective action [that] invites courts to import, through a back door, requirements with no application to the FLSA." *Id*. at 1114–15.  Rather, considering the term "similarly situated" in light of the FLSA's goals, the panel explained:

> [The FLSA's] goal is only achieved—and, therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims.  If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.

*Id*. at 1114 (internal citations and emphasis omitted).  Thus, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117.

*Campbell* also approved of the majority of district courts' two-step approach for determining whether an FLSA collective action may proceed.  *Id*. at 1108–10.  In the first step, as here, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard]. . . . loosely akin to a plausibility standard," with the analysis "focused on a review of the pleadings but [ ] sometimes [ ] supplemented by declarations or limited other evidence." *Id*. at 1109.  If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id*.  In the second step, typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied, prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id*.

     **B.**    **Analysis**

Here, defendant argues "the court should proceed directly to the second stage analysis, as extensive discovery on class and collective issues is now complete." Collective Opp'n at 11–12; Scheduling Order at 1, ECF No. 15 (ordering "[a]ll class certification and FLSA collective action certification discovery shall be completed by March 2, 2020"); Order Modifying Scheduling Order at 2, ECF No. 33 (extending the discovery cutoff for pre-certification discovery to March 21, 2021).  Before *Campbell*, courts would skip the first step "[w]here substantial

1    discovery ha[d] been completed." *Smith v. T-Mobile USA, Inc.*, No. 05-5274, 2007 WL 2385131,

2    at *4 (C.D. Cal. Aug. 15, 2007) (collecting cases).  Although plaintiffs did not reply to

3    defendant's argument, defendant has not shown that the court retains this discretion in light of

4    *Campbell* and later Ninth Circuit decisions.  The court thus proceeds with first step.

5            Plaintiffs contend the members of their proposed FLSA collective are similarly situated

6    because "[defendant] maintained similar requirements at all its hospitals and surgery centers in

7    the state of California."  Collective Mem. at 2.  Citing to declarations, plaintiffs claim, "the

8    experiences of [p]laintiffs and opt-in [p]laintiffs substantially mirror each other."  *Id.* at 12 (All

9    Class Decls.).  Additionally, plaintiffs assert their expert, Mr. Berger, "can cross-reference

10   timecard records of Class Member meal periods with payroll data and any activity data [on] Class

11   Member cell phones to show whether Class Members worked off the clock."  *Id*. at 11 (citing

12   Berger Decl. ¶ 13).  Defendant argues proposed collective members "are not similarly situated,

13   and their claims could not be manageably tried, as [p]laintiffs have not pointed to a single

14   companywide policy or practice that supports their off-the-clock claims for unpaid minimum

15   wages and overtime."  Collective Opp'n at 14.  Additionally, defendant claims the declarations

16   are insufficient to establish a FLSA violation.  *Id*.

17           Here, the proposed Collective members appear to have "held similar jobs with similar

18   functions," which may indicate they are similarly situated.  *Smothers*, 2019 WL 280294, at *7–8

19   (citation and quotation marks omitted).  However, the proposed Collective certification suffers

20   from the same defect as plaintiff's proposed class certification.  The declaration and deposition

21   evidence plaintiffs rely on is insufficient to show the proposed Collective members were

22   subjected to uniform, unlawful wage policies.  *See Martinez*, 2020 WL 5289851, at *2 (finding

23   "near-verbatim" declarations did not "support the plausibility of a common policy, practice, or

24   decision which would result in a collective-wide FLSA claim.").  The court denies this motion,

25   without prejudice.

26   **VII.   CONCLUSION**

27           The court **denies defendant's motion to exclude testimony (ECF No. 47).**

28           The court **grants defendant's motion to strike supplemental reply (ECF No. 57).**

1     The court **denies plaintiffs' motion to strike class member declarations (ECF No. 53).**

2     The court **denies plaintiffs' motion for class certification (ECF No. 43) and plaintiffs'**

3   **motion for conditional certification of collective action (ECF No. 44), each without prejudice**

4   **to renewal addressing the issues identified by this order.**

5     IT IS SO ORDERED.

6   DATED:  July 15, 2022.

CHIEF UNITED STATES DISTRICT JUDGE